UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| C.B. (A MINOR), | ) | |
| | ) | |
|     Plaintiff, | ) | |
|     vs. | ) | 1:10-cv-01484-LJM-DKL |
| | ) | |
| LEE N. TIBBETTS, INDIANAPOLIS | ) | |
| PUBLIC SCHOOL CORPORATION, | ) | |
| JOHN MARSHALL COMMUNITY HIGH | ) | |
| SCHOOL PRINCIPAL, *in his official* | ) | |
| *capacity*, | ) | |
| | ) | |
|     Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pending before the Court is Defendants', Indianapolis Public School Corporation and John Marshall Community High School ("John Marshall") Principal ("Principal") in his official capacity (collectively, "IPS"),[1] Motion for Summary Judgment [Dkt. No. 46].[2] Plaintiff, C.B. ("Plaintiff"), brings a claim for sexual harassment under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.*, as well as state law claims of negligent hiring and retention and intentional infliction of emotional distress. *See generally* dkt. nos. 1, 44. The Court has considered the parties' submissions and rules as follows.

---

[1] A default judgment previously has been entered against defendant Lee N. Tibbetts. *See* dkt. no. 45.

[2] Also pending is IPS's Motion to Strike Belated Filing [Dkt. No. 62]. The Court concludes that Plaintiff's surreply was timely filed under Local Rule 56.1(d) and Federal Rule of Civil Procedure 6(d) and **DENIES** IPS's Motion to Strike [Dkt. No. 62].

## I.  BACKGROUND

### A.  TIBBETTS'S CONDUCT

Defendant Lee N. Tibbetts ("Tibbetts") was hired by IPS as a math teacher on July 12, 2007.  Dkt. No. 48-1 ¶ 2.  Prior to hiring him, IPS conducted a criminal background check, which revealed no criminal convictions.  *Id.* ¶ 3.  IPS also reviewed recommendation letters from personnel of Cincinnati Public Schools, Tibbetts's former employer.  *Id.* ¶ 5.

In the summer of 2008, Tibbetts was transferred within IPS to John Marshall.  *Id.* ¶ 6.  The principal of Tibbetts's previous school within IPS described Tibbetts as a "good guy."  Dkt. No. 73-1 at 3.  However, Jeffrey White ("White"), the Principal at John Marshall, was concerned about Tibbetts's placement at John Marshall because White believed he had not had sufficient time to check Tibbetts's references or contact his previous employers.  Dkt. No. 54-2 ¶¶ 4–5.

On August 4, 2008, S.T., a student at John Marshall, approached White with concerns about Tibbetts's behavior.  *Id.* ¶ 6.  S.T. reported that Tibbetts touched and rubbed his leg and arm and asked questions about his sexual orientation.  Dkt. No. 73-1 at 4, 15.  S.T. also reported that Tibbetts gave him money.  *Id.* at 15.  White also heard reports that Tibbetts was calling the cell phones of male students.  *Id.* at 4.  White contacted Joe Semon, a police officer employed by IPS.  *Id.*  White also reported the incident involving S.T. to CPS.  *Id.*

CPS reviewed the report about the S.T. incident and determined that no action was warranted.  *Id.*  Linda Casey, a human resources professional for IPS, advised White that CPS "screened out" the case and Tibbetts was to continue working at John Marshall.  *Id.* at 4–5.  IPS did not conduct an internal investigation of S.T.'s allegations.

As a result of the S.T. incident, White began supervising Tibbetts more closely. White met with Tibbetts and made it clear that inappropriate conduct with students would not be tolerated and that White would be "watching" him. *Id.* at 6–7. White informed Tibbetts that he was not to be alone with any students. Dkt. No. 54-2 ¶ 9. White began visiting Tibbetts's classroom more frequently, including "walk-throughs" throughout the day. Dkt. No. 73-1 at 4, 7. However, in approximately early February of 2009, White left John Marshall on FMLA leave. *Id.* at 7. Because IPS administrators had told White not to talk to anyone about the S.T. case, White did not inform the new John Marshall administrators about his concerns regarding Tibbetts. *Id.* White did not recall receiving further complaints about Tibbetts between the S.T. incident and White's FMLA leave. *Id.* at 8.

In January 2009, Plaintiff, a freshman at John Marshall, was working in a computer lab monitored by Tibbetts. Dkt. No. 54-1 at 4. Plaintiff requested a hall pass from Tibbetts to return to class, and Tibbetts told Plaintiff to come into his classroom to receive the pass. *Id.* Plaintiff and Tibbetts went to Tibbetts's classroom a short distance from the computer lab. *Id.* Tibbetts and Plaintiff were the only people in Tibbetts's classroom. *Id.* at 5. Tibbetts locked the classroom door, directed Plaintiff to sit down, and began asking Plaintiff questions. *Id.* After asking Plaintiff whether he was dating anyone, Tibbetts attempted to touch Plaintiff through his pants near his penis. *Id.* Plaintiff moved Tibbetts's hand away. *Id.* at 5–6.

Following the incident, Plaintiff told his cousin, Seanté Watkins, about Tibbetts's conduct. *Id.* at 6–7. Plaintiff discussed the incident with his mother, Doris Preyer ("Preyer"), soon after telling his cousin. *Id.* at 7. Within a week, Preyer contacted White to express her concern about Tibbetts. Dkt. No. 73-3 at 3. White did not recall ever

meeting with Preyer.  Dkt. No. 73-1 at 9–10.  There are no records indicating that IPS investigated Tibbetts's conduct involving Plaintiff.

On May 20, 2009, a third student, I.O., accused Tibbetts of sexual abuse.  Dkt. No. 48-1 ¶ 7.  IPS suspended Tibbetts with pay pending the investigation into I.O.'s allegations, and on July 28, 2009, Tibbetts's contract with IPS was officially cancelled.  *Id.* ¶¶ 8, 10.  Tibbetts was later convicted of child molestation against both S.T. and I.O.  Dkt. Nos. 54-6, 54-7.  Tibbetts was not prosecuted for any incident involving Plaintiff.

## B.  IPS'S POLICIES

In cases of suspected sexual abuse or harassment, IPS has "Procedures for Reporting Suspected Child Abuse or Neglect" ("Abuse Policy").  *See generally* dkt. no. 54-3.  The Abuse Policy covers circumstances when a child is a suspected victim of "rape, criminal deviant conduct, child molesting (defined here as 'the fondling or touching of the buttocks, genitals, or female breasts'), child exploitation, child pornography, child seduction, [or] sexual misconduct with a minor[.]" *Id.* at 2.  When a school staff member "has reason to believe" that a child has been a victim of such abuse, that staff member has a duty to report the incident to Child Protective Services ("CPS") and the principal of the school at issue.  *Id.* at 2–3.  The principal must separately notify CPS.  *Id.* at 3.  The Abuse Policy instructs that "[o]nce a staff member has 'reason to believe' there has been abuse or neglect, do nothing <u>further to investigate</u>.  Do not discuss the matter with the alleged victim, the alleged perpetrator, staff members, or family members of the child." *Id.* at 2 (emphasis in original).

When an IPS employee is involved in the alleged abuse, the principal is to notify IPS

Police and the Chief of Human Resources. *Id.* at 3. The principal is permitted to ensure that the employee and student involved in the alleged incident have no further contact pending the investigation and alert the student's parent that an allegation has been made. *Id.* at 3, 6. Human Resources conducts any internal investigation, including receiving the report from CPS, and only Human Resources personnel may suspend an employee as a result of enforcing the Abuse Policy and related rules. *Id.* at 4. "After IPS receives the response from CPS, Human Resources will determine whether or not there needs to be an additional investigation to determine whether the employee has violated IPS policies and rules." *Id.*

For allegations within its jurisdiction, CPS submits a report to IPS giving its determination whether the allegations are "substantiated" or "not substantiated." *Id.* at 6. Following the CPS investigation, the school principal is directed to "determine whether, apart from the issue of abuse or neglect, the facts alleged raise issues of conduct or misconduct with which IPS needs to deal." *Id.* Although "CPS's findings and determination may help . . . in conducting . . . [the internal] investigation, . . . they do not substitute for [the principal's] investigation and resolution of internal IPS issues." *Id.* at 7.

In addition to the Abuse Policy, IPS maintains an Anti-Harassment Policy. *See generally* dkt. no. 54-4. The Anti-Harassment Policy allows for both informal and formal complaints. *Id.* at 2. It allows for the designation of a "Complaint Coordinator" to investigate a harassment complaint. *Id.* at 4. Specifically as applied in cases of alleged sexual harassment, "[a]ny reports made to the local child protection service or to local law enforcement shall not terminate the Complaint Coordinator's obligation and responsibility to continue to investigate a complaint of harassment." *Id.*

### C. PLAINTIFF'S CHARGES

In July 2009, Plaintiff and Preyer filed a charge of Title IX sex discrimination and retaliation against IPS with the United States Department of Education, Office of Civil Rights ("OCR"). Dkt. No. 54-10. OCR interviewed Plaintiff, Preyer, and "District personnel," although neither Tibbetts nor White were interviewed in the course of OCR's investigation. Dkt. No. 54-5 at 2. After its investigation, OCR determined that IPS had violated Title IX by failing to investigate Plaintiff's allegations. *Id.* at 10. OCR also concluded that IPS did not properly publish its procedures for dealing with sex discrimination complaints. *Id.* OCR concluded that IPS did not retaliate against Plaintiff.

On November 17, 2010, Plaintiff filed his Complaint against Tibbetts and IPS in this Court. Plaintiff alleged sex discrimination and retaliation in violation of Title IX, as well as state law claims for negligent hiring and retention, assault and battery, false imprisonment, and intentional infliction of emotional distress. Dkt. No. 1 at 1. Plaintiff later voluntarily dismissed his retaliation claim, leaving a federal claim of sex discrimination and the related state law claims. Dkt. Nos. 42, 44.

The Court includes additional facts below as necessary.

### II. LEGAL STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267–68 (7th Cir. 1990). Motions for summary

judgment are governed by Federal Rule of Civil Procedure 56(a), which provides in relevant part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a material fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine dispute of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine dispute of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Ft. Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273

(7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the court to the lack of evidence as to an element of that claim.  *See Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 & n.3 (7th Cir. 1994).  "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party."  *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

## III.  DISCUSSION

As an initial matter, the parties now agree that suing the Principal in his official capacity is redundant to the suit against IPS.  *See* dkt. no. 47 at 12–13; dkt. no. 53 at 1 n.2. Therefore, summary judgment is **GRANTED** to the Principal on all claims.

### A.  ADMISSIBILITY OF EVIDENCE

In its reply, IPS seeks to strike four exhibits submitted by Plaintiff, arguing that the exhibits are not properly authenticated, contain inadmissible hearsay, or are unreliable. Because a motion for summary judgment must be decided on admissible evidence, *Stinnett v. Iron Works Gym/Exec. Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002), the Court examines the admissibility of these exhibits first.

Exhibit ten is a letter from the OCR confirming receipt of Plaintiff's administrative complaint.  *See generally* dkt. no. 54-10.  As exhibit ten is only being admitted for the proposition that Plaintiff filed an administrative complaint with OCR, the Court concludes

that it is not submitted for a hearsay purpose and need not be stricken.

As to Plaintiff's other challenged exhibits, motions to strike at the summary judgment stage are disfavored.  S.D. Ind. L.R. 56.1(i).  In addition, exhibits five, six, and seven concern events and occurrences happening after the conduct challenged in Plaintiff's complaint.  Therefore, the Court concludes that those exhibits are irrelevant to the Motion for Summary Judgment and will not consider them here.  However, the Court declines to strike exhibits five, six, and seven at this time.

### B.  HARASSMENT UNDER TITLE IX

Plaintiff seeks to hold IPS liable under Title IX for Tibbetts's purported sexual misconduct towards him.  Title IX prohibits education programs or activities that are supported by federal funds from discrimination on the basis of sex.  *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 604 (7th Cir. 2008).  Title IX includes an implied private right of action, including the ability to recover money damages.  *Id.* at 604–05.  An educator's sexual harassment of a student may make a school district liable under Title IX. *Id.* at 605 (citing *Franklin v. Gwinett Cnty. Pub. Schs.*, 503 U.S. 60, 75; *Smith v. Metro. Sch. Dist. of Perry Twp.*, 128 F.3d 1014, 1021–22 (7th Cir. 1997)).

To hold a school district liable for damages based upon educator misconduct under Title IX, Plaintiff must demonstrate that "an official of the school district who at a minimum has authority to institute corrective measures . . . has actual notice of, and is deliberately indifferent to, the teacher's misconduct."  *Gebser v. Lago Vista Indep. Sch. Dist.*, 574 U.S. 274, 277 (1998); *Hansen*, 551 F.3d at 605.  School districts may not be held liable based on either vicarious liability or constructive notice.  *Gebser*, 574 U.S. at 288–93.  The district

"need not possess actual knowledge of a teacher's acts directed at a *particular plaintiff*, but it must still have actual knowledge of misconduct that would create risks 'so great that they are almost certain to materialize if nothing is done.'" *Hansen*, 551 F.3d at 605–06 (citing *Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004)) (emphasis in original).   In other words, if the teacher had been known to be a "serial harasser," actual knowledge on the part of the district might be found.  *Delgado*, 367 F.3d at 672.

In this case, it is clear that IPS had actual knowledge of the allegations made by S.T. well before anything happened to Plaintiff.  *See* dkt. no. 73-1 at 4, 15.  CPS investigated S.T.'s complaints and they were "screened out," so it is unclear whether IPS believed S.T.'s allegations to be substantiated in any manner.  *Id.* at 4–5.  However, White's increased surveillance of Tibbetts following the S.T. incident suggests that at least White believed S.T.'s allegations credible.  *Id.* at 6–7.  The Court concludes that there is a genuine dispute of material fact as to whether IPS had actual notice that Tibbetts's misconduct "would create risks so great that they are almost certain to materialize if nothing is done."  *Accord. Doe v. Coats*, No. 2:03-cv-137, 2005 WL 2099797, at *5 (S.D. Ind. Aug. 29, 2005) (Tinder, J.) ("vague" statement suggesting molestation creates genuine issue of material fact as to notice); *see also Hunt v. Forbes*, No. 07-1095, 2010 WL 1687863, at *5 (C.D. Ill. Apr. 26, 2010) (genuine issue of material fact as to whether prior sexual harassment provided requisite notice); *Hart v. Paint Valley Local Sch. Dist.*, No. C2-01-004, 2002 WL 31951264, at *4 (S.D. Ohio Nov. 15, 2002) (previous unproven allegations of sexual misconduct create genuine issue of material fact as to notice).

In addition to actual knowledge of Tibbetts's misconduct, Plaintiff must show that IPS was deliberately indifferent to the risks of the Tibbetts's misconduct and Tibbetts in fact

engaged in misconduct toward Plaintiff.  As to both of these elements, the Court concludes

that genuine disputes of material fact exist precluding summary judgment.  Deliberate

indifference requires that IPS's actions were "clearly unreasonable" in light of its knowledge

about Tibbetts, *see Gabrielle M. v. Pkar Forest-Chi. Heights Sch. Dist. 163*, 315 F.3d 817,

824 (7th Cir. 2003), and the reasonableness of IPS's actions can be determined only in

light of what it knew about Tibbetts, a matter about which a genuine dispute of material fact

still exists.

As to the existence of misconduct on Tibbetts's part, Plaintiff testified in his

deposition that Tibbetts engaged in some sort of sexual misconduct towards him.  Dkt. No.

54-1 at 4–6.  This is sufficient to create a genuine dispute of material fact as to whether

Tibbetts engaged in sexual misconduct.  Because there are genuine disputes of material

fact as to whether Plaintiff was the victim of sexual misconduct, as well as IPS's knowledge

of Tibbetts's previous misconduct and its response to such misconduct, the Court

concludes that IPS is not entitled to summary judgment on Plaintiff's Title IX claim.


### C.  STATE LAW CLAIMS

The parties agree that, if the Court were to grant summary judgment on Plaintiff's

Title IX claim, the Court should decline to exercise supplemental jurisdiction over the state

law claims and dismiss them with prejudice.  However, as the Court has determined that

IPS is not entitled to summary judgment on the Title IX claim, and the state law claims arise

from the same nucleus of material facts as the Title IX claim, *see United Mine Workers v.*

*Gibbs*, 383 U.S. 715, 725 (1966), the Court concludes that it is proper to retain

supplemental jurisdiction over Plaintiff's state law claims.

In his Complaint, Plaintiff brings state law claims for negligent hiring, negligent retention, and intentional infliction of emotional distress against IPS.  Neither party addresses Plaintiff's intentional infliction of emotional distress claim on summary judgment, so the Court will address only the negligent hiring and negligent retention claims.

Indiana law recognizes a cause of action against an employer for negligent hiring, supervision or retention of an employee.  *Levinson v. Citizens Nat'l Bank of Evansville*, 644 N.E.2d 1264, 1269 (Ind. Ct. App. 1994).  These claims are examined under the standard set forth in Restatement (Second) of Torts § 317.  *Konkle v. Henson*, 672 N.E.2d 450, 454 (Ind. Ct. App. 1996).  Under this standard, the Court must determine whether IPS exercised reasonable care.  *Id.* at 455.  For both negligent hiring and negligent retention, Plaintiff also must demonstrate that IPS knew Tibbetts had a "habit of misconduct" at the time of the hiring or retention.  *Levinson*, 644 N.E.2d at 1269.

Plaintiff has brought forth no evidence suggesting that Tibbetts had a habit of misconduct prior to his arrival at John Marshall, and IPS brought forth evidence demonstrating that it conducted a background check on Tibbetts and reviewed recommendations from his previous employer—neither of which indicated any previous misconduct—before hiring him.  Dkt. No. 48-1 ¶¶ 3, 5.  Therefore, the Court concludes that IPS is entitled to summary judgment as to negligent hiring.  As discussed above, however, there remains a genuine dispute of material fact as to IPS's knowledge of Tibbetts's misconduct after the S.T. incident.  Given this dispute, the Court concludes that summary judgment on Plaintiff's negligent retention claim is not appropriate at this time.  Accordingly, the Court **GRANTS** summary judgment in favor of IPS on Plaintiff's negligent hiring claim and **DENIES** summary judgment as to Plaintiff's negligent retention claim.

## IV.  CONCLUSION

For the reasons discussed herein, Defendants Indianapolis Public School Corporation and the Principal of John Marshall Community High School's Motion to Strike Belated Filing [Dkt. No. 62] is **DENIED**.

Defendants' Motion for Summary Judgment [Dkt. No. 46] is **GRANTED in part** and **DENIED in part**.  Summary judgment is **GRANTED** as to all claims against defendant John Marshall Community High School Principal in his official capacity, and those claims are **DISMISSED**.  Summary judgment is also **GRANTED** in favor of defendant Indianapolis Public School Corporation as to Plaintiff's claim of negligent hiring.  Summary judgment is **DENIED** as to Plaintiff's sexual harassment and negligent retention claims against defendant Indianapolis Public School Corporation.

IT IS SO ORDERED this 26th day of April, 2012.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Kyle Frederick Biesecker
BIESECKER DUTKANYCH & MACER, LLC
kfb@bdlegal.com

Andrew  Dutkanych III
BIESECKER DUTKANYCH & MACER LLC
ad@bdlegal.com

Caren L. Pollack
POLLACK LAW FIRM, P.C.
cpollack@pollacklawpc.com